IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS DE JESUS-SANTOS, et al.,
Plaintiffs

v.                                               CIVIL NO. 05-1336(DRD)

MORGAN STANLEY DEAN WITTER, INC.,
et al.,
Defendants

### OPINION AND ORDER

Pending before the Court is the defendant Morgan Stanley Dean Witter, Inc., (Morgan Stanley) *Motion to Compel Arbitration as to Plaintiffs Luis de Jesus and Isabel Toucet's Amended Complaint* (Docket No. 39). Morgan Stanley requests to the Court to compel arbitration and to stay the instant proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. §1, *et seq.*[1] Plaintiff duly opposed the request alleging that the Client Margin Agreement is null and void since plaintiffs' consent was obtained by fraud or by error, or deceit (Docket No. 20). Defendant replied alleging that plaintiffs' allegations of fraud are arbitrable. Further, defendant alleged that even in cases of fraudulent inducement, federal arbitrable law favors arbitration. (Docket No. 21) Finally, plaintiffs sur-replied stating that the fraud in the inception of the contract means the contract is null and void, and therefore, the entire contract is null *ab initio* and hence the arbitration clause falls. (Docket No. 24). The Court is ready to rule and for the reasons stated herein, the Court hereby **GRANTS** the defendant Morgan Stanley Dean Witter, Inc.'s *Motion to Compel Arbitration as to Plaintiffs Luis de Jesus and Isabel Toucet's Amended Complaint* (Docket No. 39).

### FACTUAL LANDSCAPE

Plaintiffs, Mr. Luis de Jesus Santos and Rafaela Sanchez, and the conjugal partnership between them; and Luis de Jesus Sanchez and Isabel Toucet, and the conjugal partnership constituted between them filed the instant complaint alleging that defendant Mr. Carlos Soto, as agent and

---

[1] The Court notes that defendant at Docket No. 12 had filed a motion compelling arbitration. Said motion to compel was denied without prejudice because plaintiff had sought leave to file an Amended Complaint (Docket No. 23). In the instant motion to compel, Morgan Stanley restated the arguments previously raised at Docket No. 12 and in its Reply at Docket No. 21. Since Morgan Stanley has requested the same remedies raised previously, the Court shall refer to the original dismissal motion, and the successive responsive motions as filed originally by both parties.

investment advisor of Morgan Stanley designed, devised and acted upon fraudulent schemes using plaintiffs' personal monies for his own benefit.[2]  As part of his scheme, Mr. Carlos Soto would convince clients to entrust him with their investments promising that said monies would be invested in low-risk instruments.  Notwithstanding, instead, Mr. Carlos Soto invested the monies received in high risk equity investments with expected higher returns and skim the difference for himself.  However, in order to accomplish its goal through the fraudulent scheme, Mr. Carlos Soto used Morgan Stanley's property, resources, equipment, and account statement forms.

On March 24, 2005, plaintiffs filed the instant complaint (Docket No. 1) and was subsequently amended (Docket No. 30) alleging seven causes of action, to wit; 1) the illegal withholding of funds by Morgan Stanley resulting from investments made in security instruments that Morgan Stanley has refused to return and the interest accrued; 2) that due to the investments performed by Mr. Carlos Soto and Morgan Stanley in instruments other than tax exempt instruments as requested by plaintiffs at the time of the initial investment, plaintiffs now face a tax imposition for which Morgan Stanley is exclusively responsible; 3) that Morgan Stanley has incurred in conduct amounting to gross negligence for their failure to establish sufficient accounting and administrative control measures avoiding the instant fraudulent scheme which resulted in Morgan Stanley's economic benefit but causing harm, emotional distress, apprehension of their financial security and fear of losing their retirement money to plaintiffs; 4) that Morgan Stanley breached its fiduciary duty towards plaintiffs in the manner it handled plaintiffs' investments allowing unauthorized trading in their accounts hence the illegal and fraudulent activities performed by Mr. Carlos Soto, and Morgan Stanley's actions are contrary to Articles 1802, and 1803 of the Puerto Rico Civil Code; 5) that at plaintiffs' expense, Morgan Stanley has benefitted from the illegal transactions performed on plaintiffs' investments accounts earning commissions and interest and refusing to reimburse said monies to the plaintiffs; 6) that co-defendants, Morgan Stanley and Mr. Carlos Soto were engaged in a pattern of racketeering activities incurring in fraudulent sale of securities, misappropriating plaintiffs' funds through the fraudulent scheme developed by co-defendant Soto and that Morgan Stanley willfully covered up Soto's illegal and fraudulent scheme resulting in violations to various sections of the Securities Act of 1933 and the Securities Act of 1934; and 7) the actions, omissions

---

[2] Plaintiffs sustain that defendant Carlos Soto, in a criminal related case before the United States District Court for the District of Puerto Rico, pled guilty if several counts of mail fraud and securities fraud in dealing with his clients accounts, including plaintiffs.

and breach of fiduciary duties violates the Securities Act of the Commonwealth of Puerto Rico causing economic harm and emotional distress to plaintiffs.

Morgan Stanley filed the instant motion to compel arbitration on the grounds that the co-plaintiffs Luis de Jesus Sanchez and Isabel Toucet and their conjugal partnership, signed a Margin Client Agreement containing an arbitration clause which provides for arbitration of all claims averred by plaintiffs in the instant complaint.  (Docket No. 12.)  Defendants aver that the broad language of the arbitration clause applies to all controversies that "arise out of or concerning" to the orders and/or transactions amongst the parties.  Further, Morgan Stanley sustains that the policy behind the  Federal Arbitration Act and the Supreme Court jurisprudence favors arbitration even in those situations wherein there are doubts concerning the scope of arbitrable issues and hence the courts must enforce arbitration agreements.  Finally, Morgan Stanley moves the Court to stay the instant proceedings pending the outcome of the arbitration process.

Co-plaintiffs counter (Docket No. 20) by asserting that the arbitration clause is unenforceable because at the time the relationship between co-plaintiffs and co-defendants was created, their consent was distorted and consequently, according to Puerto Rican law, the contract entered is invalid because at said time, the co-defendants were already deceiving other co-plaintiffs (Luis de Jesus Santos and Rafaela Sanchez).  Hence, co-plaintiffs de Jesus and Toucet sustain that should they have known that the fraudulent scheme was already taking place, they would have never provided consent to enter into an investment relationship with Morgan Stanley and Mr. Carlos Soto.

The crux of co-plaintiffs argument rests on the fact that Puerto Rican Law deems that in order for a contract to be valid, one of its requisites is that there must be consent of the contracting parties to enter into the contract.  However, should the consent be vitiated, as for instance by deceit ( in Spanish "dolo"), the induced consent renders the contract inexistent, null and void hence, the arbitration clause within the Margin Client Agreement is unenforceable.  Further, co-plaintiffs, in their opposition proffer that there is applicable case law standing for the proposition that should an arbitration clause be entered or induced by fraud, coercion, or overwhelming economic power, an arbitration clause cannot be enforced.

Further, co-plaintiffs de Jesus and Toucet affirm that their allegations in the complaint are so "intrinsically related" to the allegations of the remaining co-plaintiffs (not subject to an arbitration covenant) that the Court should not sever their causes of action and this, in turn, provides further support to deny Morgan Stanley's request to compel arbitration.  Furthermore, co-plaintiffs de Jesus

and Toucet aver that co-plaintiffs de Jesus and Sanchez's claims are not subject to arbitration because there is no agreement signed between said co-plaintiffs and Morgan Stanley.  However, because all co-plaintiffs claims arise from the same fraudulent acts perpetrated by the co-defendants there is a common question of law, hence the bifurcation of the legal causes and compelling arbitration is not adequate.  Co-plaintiffs de Jesus and Toucet aver that the court has jurisdiction to entertain their claims under supplemental jurisdiction because since co-plaintiffs de Jesus and Sanchez claims are based on federal question jurisdiction and the former claims arise from a common nucleus of operative facts, the court should retain supplemental jurisdiction.

Morgan Stanley tendered Reply (Docket No. 21) alleges that plaintiffs' opposition to arbitrate does not challenge the fact that their dispute falls within the arbitration clause contained within the Margin Client Agreement rather, it challenges the validity of said agreement allegedly based on reasons related to the basic initial contract was entered, plaintiff's consent was obtained by co-defendant Mr. Carlos Soto fraudulently and with intent to deceive.  Further, Morgan Stanley sustains that the arguments proffered by plaintiffs as to the invalidity of the arbitration clause within the Margin Client Agreement, because the consent to enter said agreement was induced by fraud, should be rejected because jurisprudence from the Supreme Court has rejected that same proposition, and because other similar case having analyzed the matter within this District Court has notwithstanding compelled arbitration in a similar situation and stayed the proceedings.[3]  Similarly, Morgan Stanley affirms that plaintiffs averments as to the arbitration clause being precluded under Puerto Rico contract law also fails because under the doctrine set forth in Prima Paint and the policy underlying the Federal Arbitration Act, state law is precluded.  In the alternative, Morgan Stanley avers that should Puerto Rican law be applicable to the instant controversy, the local arbitration act would yield the same results as in Prima Paint.

Co-plaintiffs'de Jesus-Toucet submitted a tendered Sur-reply (Docket No. 24) and affirmed that although federal law favors arbitration, the Federal Arbitration Act provides that an arbitration agreement is revocable upon those grounds that exists in law and in equity, and that Morgan Stanley's argument stating that Puerto Rico law does not govern the instant controversy are

---

[3] Morgan Stanley sustains that in Prima Paint Corp. v. Flood & Conklin Mfg. Co.,388 U.S. 395 (1987) the Supreme Court rejected the theory that fraudulent inducement of an entire agreement with an arbitration clause can provide a basis to deny a motion to compel arbitration.  Similarly, the Opinion and Order of June 17, 2005 issued by Chief Judge Fuste in Colon de Sanchez v. Morgan Stanley, Civil No. 04-2402(JAF) following Prima Paint ruled likewise.

inapposite.  Plaintiffs sustain that the jurisprudence cited by Chief Judge Fuste in his Opinion and Order clearly shows that although the Federal Arbitration Act preempts any local law discouraging arbitration, the validity and enforceability of an arbitration agreement is determined by local contract law.  Consequently, plaintiffs conclude that should this Court determine that the instant controversy is governed by Puerto Rico Law as to the validity of the contract, the doctrine set forth by the Supreme Court in Prima Paint is not applicable to the present case.  Further, plaintiffs aver that there is a clear distinction between the fraud claim in Prima Paint and in the instant case because under local law the fraud claim would render the Margin Client Agreement null and void while the claim that was faced in the Prima court the contract would be rendered voidable.[4]  In summary, plaintiffs sustain that federal arbitration statute does not override local substantive law on the legality and validity of contracts.

## LEGAL BACKGROUND

**A. Jurisdiction**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, "is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal question jurisdiction under 28 U.S.C. § 1331." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983). See also Southland Corp. v. Keating, 465 U.S. 1, 15 n.9 (1984). A suit to compel arbitration under the FAA may therefore be brought in federal district court "only when the court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis of federal jurisdiction before the order can issue." Moses H. Cone Memorial Hospital, 460 U.S. at 25 n.32. Jurisdiction in this case cannot be premised on 28 U.S.C. § 1332, for complete diversity of citizenship between the parties is lacking. However, because the underlying dispute involves claims under the Securities and Exchange Act, 15 U.S.C. § 78, the Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over the federal securities claims.  Further, the Court enjoys supplemental jurisdiction over the underlying state-law claims because they are so intimately related to the federal securities law claims that they form part of the same case or controversy or a common nucleus of operative facts. 28 U.S.C. § 1367(a).

---

[4] Plaintiffs' claim that the fraud lies in the establishment of the contract and not in the individual economic transactions occurring after the contract was entered.

B.    **The Federal Arbitration Act**

1.    **Same footing for arbitration clauses**

Section 2 of the Federal Arbitration Act provides, in pertinent part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract.

9 U.S.C. § 2 (emphasis added). Congress enacted the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219-220 (1985), and to place arbitration agreements "upon the same footing as other contracts," Scherck v. Alberto-Culver Co., 417 U.S. 506, 511 (1974). See also Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 270-275 (1995).

In the view of Congress, the traditional judicial hostility to arbitration was uncalled for, given that "arbitration is simply a matter of a contract between the parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Furthermore, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than in a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). As the Supreme Court once remarked, "[a]n agreement to arbitrate before a specialized tribunal is 'in effect, a specialized kind of forum-selection clause,' that posits not only the situs of the suit but also the procedure to be used in resolving the dispute." Scherck v. Alberto-Culver Co., 417 U.S. 506, 519 (1974) (citing The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).[5]

The language of Section 2 of the FAA is couched in imperative binding terms. "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the

---

[5] Indeed, in Scherck, 417 U.S. at 519, the Supreme Court interpreted the statutory policy favoring arbitration similar to the judicial policy that "a forum clause should control absent a strong showing that it should be set aside," previously announced in The Bremen, 407 U.S. at 15.

power of the states[6] to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). See also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 224-225 (1985)[7](Courts must compel arbitration if FAA requirements met, even when result is bifurcation of proceedings). "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." Southland Corp. v. Keating, 465 U.S. 1, 7 (1984).

The practical effect of § 2 of the FAA is to ensure that arbitration agreements are treated no differently than any other private contractual agreements, notwithstanding any state statutes or judicial decisions to the contrary.  On this matter the Supreme Court has stated that:

> States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause upon such grounds as exist at law or in equity for the revocation of any contract.' . . . What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit) but not fair enough to enforce its arbitration clause. The [FAA] makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the [FAA's] language and Congress's intent.

 Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 281 (1995) (emphasis added). Similarly, the Supreme Court has stated that:

> State law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the text of § 2 of the FAA]. . . . A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for

---

[6] Because the FAA was promulgated under Congress' power under the Commerce Clause, it is applicable in state as well as federal courts. Southland Corp. v. Keating, 465 U.S. 1, 12 (1984).

[7] The doctrine of Reynolds, supra, disposes of plaintiffs' argument opposing arbitration based on bifurcation of the causes of action of co-plaintiffs not subject to arbitration being their causes of action allegedly intrinsically related to de Jesus-Sanchez.  (Docket No. 20, P. 10-13).

> a state-law holding that enforcement would be unconscionable, for this
> would enable the court to effect what we hold today the state legislature
> cannot.

Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) (italics in original; underlined emphasis added).

Therefore,

> Absent a well-founded claim that an arbitration agreement resulted from
> the sort of fraud or excessive economic power that would provide
> grounds for the revocation of any contract, . . .  the [FAA] provides no
> basis for disfavoring agreements to arbitrate statutory claims by skewing
> the otherwise hospitable inquiry into arbitrability.

Shearson/American Express v. McMahon, 482 U.S. 220, 227 (1987).

### 2.    Presumptions and arbitrability

As discussed above, "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the act." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  "The Act, however, does not define what grounds for revocation may be permissible, and hence it would appear that the judiciary must fashion the limitations as a matter of federal common law." Southland Corp. v. Keating, 465 U.S. 1, 19 (1984) (Stevens, J., concurring in part and dissenting in part).

A federal common law of arbitrability has been developed to guide federal courts in determining whether to enforce arbitration agreements, based on the fundamental principle that "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration," First Options, 115 S. Ct. at 1924.  Most generally, agreements to arbitrate are "generously construed." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). In keeping with this general presumption,

> Questions of arbitrability must be addressed with a healthy regard for the
> federal policy favoring arbitration. . . .  The Arbitration Act establishes
> that, as a matter of federal law, **any doubts concerning the scope of
> arbitrable issues should be resolved in favor of arbitration**, whether
> the problem at hand is the construction of the contract language itself or
> an allegation of waiver, delay, or a like defense to arbitrability.

Moses H. Cone Memorial Hosp., 460 U.S. at 24-25 (emphasis ours). The Supreme Court has therefore set forth a more specific presumption of arbitrability:

> It has been established that were a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

AT & T Technologies, Inc. v. Communications Workers of America, Inc., 475 U.S. 643, 650 (1986) (citing Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583 (1960)).[8] This presumption has recently been recast as follows: "Due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995).

However, this presumption that a dispute is arbitrable extends only to disputes on the merits. In contrast, the federal law of arbitrability has developed a countervailing presumption that the courts should decide questions of arbitrability; that is, disputes as to whether the parties entered into an arbitration agreement in the first place. In that regard, the Supreme Court has written that:

> When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts. . . . The relevant state law here, for example, would require the court to see whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration. . . .
>
> This Court, however, has (as we just said) added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.[9] . . . In this manner, the law treats silence or ambiguity about the question "who (primarily) should decide arbitrability" differently from the way it treats silence or

---

[8] Although the presumption of arbitrability was originally developed in cases dealing with labor relations arbitration controversies, it has since been extended to cover all other cases under the FAA. First Options of Chicago v. Kaplan, 514 U.S. 938, 943 (1995).

[9] The Court was referring to its earlier decision in AT & T Technologies, Inc. v. Communications Workers of America, Inc., 475 U.S. 643, 649 (1986).

ambiguity about the question "whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement" -- for in respect to this latter question the law reverses the presumption.

First Options of Chicago v. Kaplan, 514 U.S. at 943(citations omitted). Timeliness defenses, including statutes of limitations defenses, do not normally present questions of arbitrability. PaineWebber, Inc. v. Elahi, 87 F.3d 589, 597 (1st Cir. 1996).  The same conclusion can be derived, in the federal labor law context, from the distinction between substantive and procedural arbitrability.  Local 285, Service Employees International Union, AFL-CIO v. Nonotuck Resource Associates, Inc., 64 F.3d 735, 739 (1st Cir. 1995) (Torruella, Ch.J.)("Thirty years of Supreme Court and federal circuit court precedent have established that issues concerning the timeliness of a filed grievance are 'classic' procedural questions to be decided by an arbitrator").

## LEGAL ANALYSIS

The issue whether a claim of fraud in the inducement of an entire contract is subject to arbitration or fall within the jurisdiction of the court to be resolved constitutes a controversy previously addressed by the Supreme Court in Prima Paint Corporation v. Flood Conklin Mfg. Co., 388 U.S. 395 (1967).  The Supreme Court determined that "if the claim is fraud in the inducement of the arbitration clause itself - an issue which goes to the 'making' of the agreement to arbitrate - the federal court may proceed to adjudicate it".  Prima Paint, 388 U.S. at 403-404.  To the contrary, when a court in passing upon an application for a stay of arbitration "federal court[s] [are] instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.'"  Prima Paint, 388 U.S. at 403.  In other, words, "a federal court may consider only the issues relating to the making and performance of the particular agreement to arbitrate".  Intercall Telecommunications, Inc. v. Instant Impact, Inc., 376 F.Supp.2d 155, 159 (D.P.R. 2005).  Thus, except where the parties otherwise intend, arbitration clauses as a matter of federal law are separable from the contracts in which they are embedded, and "**that where no claim of fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud**." Prima Paint, 388 U.S. at 402 (emphasis added).

In Scherk v. Alberto Culver Company, 417 U.S. 506, 519 (1974) the Supreme Court reasoned that an arbitration agreement is a "specialized kind of forum-selection clause" because besides selecting the situs of the suit also provides the procedure to be followed to resolve the

dispute.  In its analysis the <u>Scherk</u> court noticed that previously in <u>Bremen v. Zapata Off-Shore</u>, 40 U.S. 1, 13 (1972) the Supreme Court had determined that forum selection clauses should be given "full effect" when freely negotiated by the parties and said agreement is "unaffected" by fraud. Notwithstanding, the Court cited the <u>Prima Paint</u>, *supra*, ruling standing for the proposition that forum-selection clauses within a contract are unenforceable should the inclusion of said forum-selection clause within the contract be the product of fraud or coercion.  Consequently, since the <u>Scherk</u> court provided an analogy amongst arbitration agreements and forum-selection clauses, it is evident that arbitration agreements reached amongst contracting parties are fully enforceable should the inclusion of said agreement to arbitrate not result from coercion or fraud.

Similarly, it has been held that when a party challenges the making of a contract containing an arbitration clause, the parties cannot be compelled to arbitrate the "threshold issue" of the existence of an arbitration agreement, but rather, the Court must determine the existence of said agreement to arbitrate**.  <u>Three Valleys Municipal Water District v. E.F. Hutton & Co.</u>, 925 F.2d 1136, 1141-1142 (9th Cir. 1991); <u>MCI Telecommunications Corp. v. Matrix Communications</u>, 135 F.3d 27, 32 (1st Cir. 1998)(standing for the proposition that fraud in inducing acceptance of the arbitration clause unquestionably would negate the contractual agreement on that issue"); <u>Wick v. Atlantic Marine, Inc.</u>, 605 F.2d 166, 168 (5th Cir. 1979)(stating that if the arbitration clause is induced by fraud, there can be no arbitration).

Therefore, as stated by another Court within this District, "[T]he <u>Three Valleys</u> Court pointed out that <u>Prima Paint's</u> holding, that a federal court may consider fraud in the inducement of a contract only if the fraud specifically relates to the arbitration clause itself and not to the contract generally, is limited 'to challenges seeking to avoid or rescind a contract - not to challenges going to the very existence of a contract that a party claims never to have agreed to ... [and any contrary rule] would lead to untenable results." <u>Rivera v. Clark Melvin Securities Corp., et al.</u>, 59 F.Supp.2d 297, 304 (D. Puerto Rico 1999)(*citing* <u>Three Valleys</u>, 925 F.2d at 1140).

A thorough examination of the complaint shows that the fraud allegations proffered by plaintiffs are geared towards establishing that co-defendants Morgan Stanley and Mr. Carlos Soto developed a fraudulent scheme wherein although co-plaintiffs provided specific instructions on how to invest their monies, co-defendants obviated co-plaintiffs instructions and contrariwise counter-invested in instruments other than those specified by co-plaintiffs and/or misappropriated co-plaintiffs' funds for their own benefit.  Pursuant to a review of the allegations, the fraudulent scheme

resulted from illegal trading performed by Mr. Carlos Soto and Morgan Stanley's cover up of said illegal activities for a period encompassing fourteen years. Further, the complaint contains several allegations charging Morgan Stanley with negligent supervisory responsibility upon the acts performed by co-defendant Mr. Carlos Soto; Morgan Stanley's reluctance to indemnify co-plaintiffs' for the loss resulting from said illegal acts; and Morgan Stanley's failure to reimburse the commissions charged on said unauthorized transactions resulting in substantial economic benefits to Morgan Stanley.

However, co-plaintiffs Sanchez-Toucet have failed to allege that the arbitration agreement[10] contained within the Client Margin Agreement was entered as a result of fraud or coercion by any of the co-defendants. Basically, co-plaintiffs Sanchez-Toucet fraud allegations rest upon sustaining that should they had known that co-defendant Mr. Carlos Soto was prior thereto deceiving co-plaintiffs Sanchez-De Jesus, they would have never entered into a business relationship with the co-defendants. Certainly, this is not the type of fraud allegation required by the applicable jurisprudence that will sustain that an arbitration clause be declared unenforceable. **As stated previously, the fraud allegations should be geared to establishing that the inclusion of said arbitration clause resulted from fraud or coercion**. Prima Paint, 388 U.S. at 403 (emphasis added). The complaint shows that the arbitration clause is not in issue, the issue relates to the conduct incurred by co-defendants convincing co-plaintiffs de Jesus-Toucet in entering into the Client Margin Agreement, which happens to contain an arbitration clause. Consequently, plaintiffs opposition as to staying the instant proceedings pending the outcome of the arbitration cannot stand and co-defendant Morgan Stanley's request to compel arbitration shall be granted and pursuant to

---

[10] The arbitration clause within the Client Margin Agreement provides in its relevant parts that:

> You agree that all controversies between you or your principals or agents and Morgan Stanley or its agents (including affiliated corporations) arising out of or concerning any of your agents, orders or transactions, or the construction, performance or breach of this or any other agreement between us, whether entered into before or after the date an account is opened, shall be determined by arbitration only before the New York Stock Exchange, Inc.; the National Association of Securities Dealers, Inc. or the Municipal Securities Rulemaking Board, as you may elect....
>
> ...
>
> The laws of the State of New York, will apply in all respects, including but not limited to determination of applicable statutes of limitation and available remedies. The award of the arbitrator or a majority of them shall be final, and judgment on the award may be entered in any state or federal court having jurisdiction.

section 3 of the Federal Arbitration Act,[11] the proceedings as to co-plaintiffs De Jesus-Toucet including actions as to agents and employees of co-defendants are hereby **STAYED**.[12]

The Court notes that co-plaintiffs De Jesus-Toucet aver that their causes of action should not be severed from co-plaintiff's De Jesus-Sanchezes' causes of action because their claims are "intrinsically related", the claims arise from a common nucleus fraudulent acts, and share a common question of law. This allegation has been already decided by the Supreme Court against plaintiffs pretentions. Reynolds v. Bird, 470 U.S. at 224-225. Finally, co-plaintiffs De Jesus-Toucet sustain that bifurcation of the causes of action would not be appropriate, it will not promote judicial economy, and some confusion and inconsistent results may be possible. In turn, co-defendant Morgan Stanley simply sustains that co-plaintiffs averments are contrary to the mandatory arbitration.

The Court has reviewed the allegations in the complaint. Evidently, no arbitration may be compelled as to co-plaintiffs De Jesus-Sanchez because said co-plaintiffs did not enter into a Client Margin Agreement with co-defendant Morgan Stanley. Further, co-plaintiffs De Jesus-Toucet have failed to develop an argument as to why the instant claims should not be stayed pending the arbitration outcome. It is the law in this Circuit that legal arguments alluded to in a perfunctory manner but unaccompanied by a developed argumentation, are deemed abandoned. Forestier Fradera v. Municipality of Mayaguez, __ F.3d __, 2006 WL 475768 (1st Cir. 2006); U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Further, "it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones". Id. After all, "[J]udges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments square and distinctly,' or else

---

[11] Section 3, of the Federal Arbitration Act, 9 U.S.C. §3 provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall upon application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[12] All actions against third-party beneficiaries of the arbitration clause, employees, and agents of defendant are covered by the arbitration clause and are hence **STAYED**. Pritzker v. Merrill Linch, et al., 7 F.3d 1110, 1121 (3rd Cir. 1993); Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185, 1187-1188 (9th Cir. 1986).

forever hold its peace".  Id., *citing* Rivera de Gomez v. Castro,843 F.2d 631, 635 (1st Cir. 1988)(*quoting* Patterson-Leitch Co. v. Massachusets Municipal Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988)).  Consequently, co-plaintiff's arguments not to sever the instant claims are deemed abandoned.

Therefore, for the reasons stated herein, the Court **GRANTS** defendant Morgan Stanley Dean Witter, Inc., *Motion to Compel Arbitration as to Plaintiffs Luis de Jesus and Isabel Toucet's Amended Complaint* (Docket Nos. 12 and 39).  Further, the Court hereby **STAYS** co-plaintiffs De Jesus-Toucet's  non arbitrable claims pursuant to section 3 of the Federal Arbitration Act, and **COMPELS** arbitration as to all arbitrable claims as described herein (Docket Nos. 12 and 39).  The instant parties are ordered to report on the progress of the arbitration proceedings **every sixty (60) days**.  However, the Court sever co-plaintiffs De Jesus-Sanchezes' claims and the instant proceedings shall continue amongst said plaintiffs and the co-defendants.[13]

**IT IS SO ORDERED.**
In San Juan, Puerto Rico this 22nd day of March 2006.

**S/DANIEL R. DOMINGUEZ**
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

---

[13] Defendants' motion to dismiss the Amended Complaint filed at Docket No. 38 remains to be decided. The Court urges the parties to continue settlement conversations.

**Page 14 of  14**